**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ROBERT CAPPS, MD, and AILY HOANG, RN, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 6:22-cv-00391-JCB-KNM |
| HENDERSON COUNTY, TEXAS, and JAMES BAILEY, | § § § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Robert Capps and Aily Hoang initiated the above-styled lawsuit seeking relief against Defendants James Bailey and Henderson County pursuant to 42 U.S.C. § 1983. This case is referred to the undersigned pursuant to 28 U.S.C. § 636. Before the Court is Defendant James Bailey's Motion for Summary Judgment (Doc. No. 39), Defendant Henderson County's Motion for Summary Judgment (Doc. No. 59), and Defendants' Motion to Strike (Doc. No. 50). Upon consideration of the parties' pleadings and the relevant law, the Court **RECOMMENDS** that Defendant James Bailey's Motion for Summary Judgment (Doc. No. 39) be **GRANTED** on the grounds that he is entitled to qualified immunity and that the Court does not have subject matter jurisdiction over the declaratory judgment action. The Court also **RECOMMENDS** that Defendant Henderson County's Motion for Summary Judgment (Doc. No. 59) be **GRANTED** on the grounds that Plaintiffs have failed to state a claim against Henderson County and that the Court does not have subject matter jurisdiction over the declaratory judgment action. Defendants' Motion to Strike (Doc. No. 50) is also **GRANTED**.

1

## BACKGROUND

Plaintiffs Robert Capps and Aily Hoang sue Henderson County and James Bailey pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment.[1] Plaintiffs also request a declaratory finding that their sewage disposal system does not require a permit under Texas Health and Safety Code § 366.052(a).[2]

At all times relevant to this lawsuit, Mr. Bailey served as Henderson County's designated representative inspecting onsite sewage facilities ("OSSFs").[3] As part of his job, Mr. Bailey "inspect[ed] residential and commercial septic systems in Henderson County to ensure that the systems functioned properly and were being operated in compliance with all requirements, codes, ordinances, and regulations of local and state governments, including the Texas Commission for Environmental Quality."[4]

Plaintiffs state Mr. Bailey posted a "Notice of Violation" on the door of their home on October 19, 2020, which read: "on-site sewage facility installed or operated without required permit or license."[5] Mr. Bailey placed this Notice of Violation on Plaintiffs' door while they were out of town.[6] Plaintiffs submit that Mr. Bailey would have had to "breach their fencing and gate . . . without notice, consent or authorization" to post the notice, and that he needed a warrant to do so.[7] Plaintiffs allege that after Mr. Bailey's October 19, 2020 visit, Plaintiffs contacted Mr. Bailey and gave him "explicit notice . . . that he needed to obtain either consent from plaintiffs or

---

[1] At the beginning of their Complaint, Plaintiffs state that "Defendant Bailey is being sued in his individual capacity." Doc. No. 1 at ¶ 6. However, later in the Complaint the Plaintiffs request a finding that "the conduct of James Bailey, individually, and as agent of Henderson County" violated the Fourth Amendment. *Id.* at ¶ 28. The Court will analyze Mr. Bailey's liability both individually and in his official capacity.

[2] *Id.* at ¶ 21.

[3] Doc. No. 39-2 at 2.

[4] *Id.*

[5] Doc. No. 1 at ¶ 9.

[6] *Id.* at ¶ 13.

[7] *Id.* at ¶ 11–12.

a warrant before entering this enclosed residential property."[8] However, Plaintiffs state that on December 8, 2020, Mr. Bailey entered their property without consent once again.[9]

Mr. Bailey moved for summary judgment on the grounds that he is entitled to qualified immunity.[10] Mr. Bailey states that on October 19, 2020, he received an anonymous complaint that the OSSF on the Plaintiffs' property violated applicable rules because it was too close to the property line.[11] Mr. Bailey drove to the Plaintiffs' property. From his vantage point on the public road, Mr. Bailey asserts that he could see piles of dirt that he believed to be a makeshift septic system and that were closer to the property line than the required 100-foot distance.[12] The piles of dirt were near the Plaintiffs' single-wide trailer house, around 100 yards from the road.[13] Mr. Bailey states he "walked up to the house and knocked on the door. No one answered."[14] According to Mr. Bailey, the "single-wide trailer house was approximately thirty feet away from a fence which appeared to be the property line. The pile of dirt and makeshift septic system was between the house and the fence."[15] Mr. Bailey alleges that he saw a PVC pipe jutting out from the single-wide trailer house that had sewage dripping from it and onto the ground.[16]

Mr. Bailey took photos of the violations and affixed a Notice of Violation to the door of the home, along with his business card.[17] Plaintiff Capps later contacted Mr. Bailey by email requesting an explanation for the notice.[18] According to Mr. Bailey, "neither Dr. Capps nor any other person ever told [Mr. Bailey] not to enter his property."[19] Their email communication led

---

[8] *Id.* at ¶ 15.
[9] *Id.*
[10] Doc. No. 39 at 14.
[11] *Id.* at 8–9; Doc. No. 39-2 at 3.
[12] Doc. No. 39 at 9; Doc. No. 39-2 at 3.
[13] Doc. No. 39 at 9; Doc. No. 39-2 at 3.
[14] Doc. No. 39 at 9; Doc. No. 39-2 at 3.
[15] Doc. No. 39 at 9; Doc. No. 39-2 at 3.
[16] Doc. No. 39 at 10; Doc. No. 39-2 at 3. Plaintiffs contend that the discharge from the pipe was not sewage, but greywater. *See* Doc. No. 48 at 14.
[17] Doc. No. 39 at 10; Doc. No. 39-2 at 3.
[18] Doc. No. 39 at 10; Doc. No. 39-2 at 5.
[19] Doc. No. 39 at 10; Doc. No. 39-2 at 5.

Mr. Bailey to believe that Dr. Capps would contact him about the Notice of Violation again when Dr. Capps returned from out of town.[20]

Mr. Bailey states he visited the Plaintiffs' property again on December 8, 2020, because he had not heard back from Dr. Capps as he expected to.[21] Mr. Bailey states that "when he arrived at the Plaintiffs' driveway, [he] saw there was a new manufactured gate at the entrance."[22] Mr. Bailey walked through the unlocked gate and knocked on the door, which Plaintiff Hoang answered.[23] Dr. Capps came outside and motioned for Mr. Bailey to walk away from the porch and the three of them had a discussion about the Notice of Violation as they walked back towards Mr. Bailey's truck.[24]

Mr. Bailey's Motion for Summary Judgment on Qualified Immunity argues that he is entitled to qualified immunity because Plaintiffs have failed to allege that their constitutional rights were violated and because no reasonable inspector in Mr. Bailey's position would have believed his actions violated the Constitution.[25] In the same motion, Mr. Bailey argues that: (1) he is entitled to official immunity; (2) he is entitled to Eleventh Amendment immunity; (3) Plaintiffs have failed to state a claim against Henderson County; and (4) that the court should deny the declaratory relief requested by the Plaintiffs.[26] Defendant Henderson County's motion for summary judgment reiterates similar arguments: that (1) Plaintiffs have failed to state a claim against Henderson County; (2) Henderson County is entitled to Eleventh Amendment immunity; (3) Plaintiffs have failed to state a *Monell* claim against Henderson County; and (4) that the court should deny the declaratory relief requested by the Plaintiffs.[27]

---

[20] Doc. No. 39 at 11; Doc. No. 39-2 at 5.
[21] Doc. No. 39 at 11; Doc. No. 39-2 at 5.
[22] Doc. No. 39 at 11; Doc. No. 39-2 at 5.
[23] Doc. No. 39 at 11; Doc. No. 39-2 at 5–6.
[24] Doc. No. 39 at 11; Doc. No. 39-2 at 6.
[25] Doc. No. 39 at 19–20.
[26] *Id.* at 22–26.
[27] Doc. No. 59 at 13–19.

**DEFENDANTS' MOTION TO STRIKE (DOC. NO. 50)**

The Court begins by addressing Defendants' motion to strike (Doc. No. 50), as the outcome of this motion determines the evidence before the Court on the pending summary judgment motions. Defendants move to strike several exhibits labeled as "affidavits" attached to Plaintiffs' response to Defendant James Bailey's motion for summary judgment.[28] Defendants' motion to strike argues that the format of all three affidavits is improper and that the substance of the affidavits is defective because they "brim with rank speculation, unsubstantiated assertions, hearsay, and facts beyond the personal knowledge of the affiant."[29]

As Defendants note in their motion, an unsworn declaration is insufficient to raise a fact issue precluding summary judgment. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013). However, 28 U.S.C. § 1746 provides an exception to this general rule. *Id.* For the exception to apply, the declaration must be signed, dated, and state "under penalty of perjury" that its contents are "true and correct." 28 U.S.C. § 1746.

The three self-styled affidavits that are attached to the Plaintiffs' response are neither sworn nor in conformity with 28 U.S.C. § 1746. The documents contain the "under penalty of perjury" and "true and correct" language. However, they are neither dated nor signed.[30] "Courts do not typically exclude an undated declaration unless it fails to comply with some other statutory requirement as well." *Olibas v. John Barclay Native Oilfield Servs., LLC*, No. 3:11-CV-2388, 2014

---

[28] *See* Doc. No. 48-2, 48-3, 48-4.

[29] Doc. No. 50 at 3. The Defendants do not point to specific paragraphs of the self-styled affidavits to support their allegations.

[30] The typed names "LyHoang, APRN, NP-C" and "Robert Capps, MD" appear at the bottom of the self-styled affidavits, but no "/s/" notation accompanies the names. Some district courts have noted that an electronic signature can meet the signature requirement of 28 U.S.C. § 1746, but the electronic signatures in those cases contained the "/s/" notation. *See Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, No. 1:15-CV-0859-RWS, 2019 WL 1295004, at *11 (N.D. Ga. Mar. 21, 2019) (holding that a declaration with a typed signature using the "/s/" notation was acceptable and could be treated as an affidavit for purposes of ruling on summary judgment); *Wingate v. Gage Cnty. Sch. Dist. No. 34*, No. 4:06CV3240, 2007 WL 2904094, at *1 (D. Neb. Sept. 28, 2007) (stating in dicta that the affidavits are considered "signed" because they bear electronic signatures).

WL 12602869, at *2 (N.D. Tex. Mar. 12, 2014) (compiling cases). Here, the exhibits are undated *and* unsigned. Defendants duly objected to the defects in the affidavits, and Plaintiffs had ample opportunity to move for leave to file corrected affidavits or respond as to why their three self-styled affidavits should be considered competent evidence. However, Plaintiffs did not file a response to Defendants' motion to strike.

Defendants' objection to these declarations on the grounds that their format is improper is **SUSTAINED**. It is **ORDERED** that Defendants' Motion to Strike Plaintiffs' Evidence Attached to their Response to Motion for Summary Judgment (Doc. No. 48-2, Doc. No. 48-3, Doc. No. 48-4) is **GRANTED**. Because the Court strikes these declarations from the record in full, it does not reach Plaintiffs' arguments regarding the improper substance of the declarations.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence show that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing there is no genuine dispute about any element essential to the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one that might affect the outcome of the suit under governing law. *Id.* Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

When ruling on a motion for summary judgment, the Court must make all inferences from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party may meet its burden by pointing to the absence of evidence supporting any claim. *Celotex Corp.*, 477 U.S. at 325.

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports that party's claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson*, 447 U.S. at 247, 106 S. Ct. 2505).

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In doing so, the nonmovant "cannot rely on the facts in its unverified complaint," it must instead "point to evidence in the record sufficient to establish the alleged facts[.]" *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991). Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenn. Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

## ANALYSIS

### I.    Sovereign Immunity

States enjoy sovereign immunity from suit, and when a state agency or an arm of the state is the named defendant, the Eleventh Amendment bars suits in federal court unless the state has waived its immunity. *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 347 (5th Cir. 2019). Because sovereign immunity is jurisdictional, the Court will address Defendants' sovereign-immunity arguments first. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986) (noting that the proper course of action for the district court would have been to treat the motion for summary judgment on the sovereign-immunity issue as a motion to dismiss for lack of

subject matter jurisdiction). Defendants, as the party asserting sovereign immunity, bear the burden of demonstrating Henderson County is an arm of the state. *See Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) (collecting cases).

Under the Eleventh Amendment, "only States and arms of the State possess immunity from suits authorized by federal law." *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). The Defendants state in their motions for summary judgment that both Mr. Bailey and Henderson County are entitled to sovereign immunity because "both Henderson County and Mr. Bailey were acting as agents of the State of Texas under its inherent regulatory powers, making the State the real party in interest."[31] The Defendants argue that a decision in Plaintiffs' favor would operate against Texas's regulatory scheme and interfere with public administration because the Texas legislature has determined public sanitation is a fundamental state interest.[32] In response, Plaintiffs say that they have not sued the State of Texas either directly or indirectly.[33] They assert that the state treasury is not in any way at risk by granting relief to Plaintiffs, and that they are not trying to compel the state to act or refrain from acting.[34]

The Supreme Court has consistently declined to extend Eleventh Amendment immunity to counties, even when the counties "exercise a 'slice of state power.'" *N. Ins. Co.* 547 U.S. at 193–94 (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)). The Fifth Circuit has made it clear that "state sovereign immunity applies only to states and state officials, not to political subdivisions like counties and county officials." *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022).

---

[31] Doc. No. 39 at 23; Doc. No. 59 at 16.
[32] Doc. No. 39 at 23.
[33] Doc. No. 70 at 29.
[34] Doc. No. 48 at 24–25; Doc. No. 70 at 29.

Here, Defendants have not established that the official-capacity claims against Mr. Bailey and the claims against Henderson County divest the court of subject matter jurisdiction due to sovereign immunity. Defendants' allegations that a decision in Plaintiffs' favor would operate against the State of Texas's regulatory scheme and interfere with public administration are conclusory, and their arguments do not overcome the clear Supreme Court and Fifth Circuit precedent holding that sovereign immunity does not extend to counties. *See Lake County Estates, Inc.* 440 U.S. at 401; *Russell*, 49 F.4th at 512. Therefore, the Court does not recommend dismissing Plaintiffs' claims against Henderson County for lack of subject matter jurisdiction.

## II.    Qualified Immunity

Plaintiffs claim that Mr. Bailey violated their Fourth Amendment right to be free from an unreasonable search. Mr. Bailey asserts qualified immunity. "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017). The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (quoting *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012)). To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotations omitted). "The clearly established right must

be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). To rebut the qualified immunity defense in this case, the plaintiffs must point to controlling precedent from the Supreme Court, the Fifth Circuit, or "a robust consensus of persuasive authority" that clearly establishes the violative nature of the particular conduct. *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc).

In *Pearson v. Callahan*, the Supreme Court held that courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In dicta, the Court noted that in cases where the briefing of constitutional questions is "woefully inadequate," deciding the first prong of the qualified immunity analysis before the second could "create a risk of bad decisionmaking." *Pearson*, 555 U.S. at 239. Here, both parties devote scant briefing to the question of whether Mr. Bailey's visits to the property violated the Fourth Amendment. Because this question has not been adequately briefed, the Court will decide the second prong of the qualified immunity analysis—whether Mr. Bailey's visits to the property violated clearly established law. Neither visit did.

### A. Mr. Bailey did not violate clearly established law during his first visit

The Fourth Amendment of the United States Constitution provides, in pertinent part, that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. An individual's right to be free from governmental intrusion in his home is at the very core of the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

The areas immediately surrounding and associated with the home, commonly referred to as the curtilage, are part of the home for Fourth Amendment purposes. *Id.* (citing *Oliver v. United*

*States*, 466 U.S. 170, 176 (1984)). In determining whether an area is part of the curtilage, courts consider: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn,* 480 U.S. 294, 301 (1987).

The Supreme Court has held that the front porch is the "classic exemplar" of an area adjacent to the home falling within the curtilage. *Jardines*, 569 U.S. at 7. However, an officer, like any member of the public, has an implied license to enter a home's curtilage to knock on the front door, seeking to speak with the home's occupants. *See Id.* at 8. "[I]t is not a Fourth Amendment search to approach the home in order to speak with the occupant, *because all are invited to do that*. The mere purpose of discovering information in the course of engaging in that permitted conduct does not cause it to violate the Fourth Amendment." *Id.* at 9 n.4 (citation, internal quotation marks omitted). This procedure is often called a "knock and talk." *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

The Eighth Circuit has held that "it is clear that, without a warrant, [a code inspector can] enter the property through its open gate and proceed up the driveway to the front door of the main residence to ask for consent to search *inside* any part of the residence." (citations omitted). *Nikolas v. City of Omaha*, 605 F.3d 539, 546 (8th Cir. 2010). The inspector can observe his surroundings as he does so. *Id*. The inspector in *Nikolas* saw a garage he believed violated code requirements while knocking on the front door of the plaintiff's residence. He then circled the garage and "looked in every window and door." *Id.* at 545. The Court ultimately held that the code inspector's exterior search of the garage, which warrants "protection comparable to that afforded the curtilage of a residence," by "look[ing] through the windows" did not violate the Fourth Amendment. *Id*.

11

On Mr. Bailey's first visit to Plaintiffs' property, he exercised his implied license to enter the curtilage of Plaintiffs' single-wide trailer home and knock on their front door. This behavior, as noted by the Eighth Circuit in *Nikolas*, is not inherently unconstitutional. *See Id.* at 546. In their complaint, the specific behavior that Plaintiffs contend was unconstitutional was Mr. Bailey placing a Notice of Violation on their front door.[35] Plaintiffs state this intrusion "was unauthorized and unconsented and therefore violated their rights."[36] Plaintiffs appear to assert that Mr. Bailey's conduct was particularly violative because they had "secur[ed] their front gate" before his visit.[37] Therefore, Plaintiffs allege Mr. Bailey would have had to "breach" their fencing and gate when he left his Notice of Violation on their home.[38] Plaintiffs do not cite to competent summary judgment evidence for the assertion that they had a secured gate and fencing around their property the day Mr. Bailey visited.[39]

Even if Plaintiffs had successfully created a genuine dispute of material fact regarding whether they had secured the gate, Mr. Bailey would still be entitled to qualified immunity. This is because Plaintiffs have not cited, and this Court has not found, a Supreme Court case, a Fifth Circuit case, or "a robust consensus of persuasive authority" that clearly defines what physical alterations to a home (such as placing a secured gate at the entrance of a driveway) revoke the implied license to conduct a "knock and talk." *Cf United States v. Carloss,* 818 F.3d 988, 997 (10th Cir. 2016) (holding that homeowners did not revoke the implied license to enter when they posted "No Trespassing" signs in the yard and a "Posted Private Property Hunting, Fishing, Trapping or

---

[35] Doc. No. 1 at ¶ 13.
[36] *Id.*
[37] *Id.* at ¶ 8.
[38] *Id.* at ¶ 8–11.
[39] Plaintiffs cite to their unverified complaint to establish that a perimeter fence with a secure gate surrounded their property on October 19th. *See* Doc. No. 48 at 3–5. Plaintiffs cannot rely on the facts in their unverified complaint to defeat a motion for summary judgment. *Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir. 1991). Plaintiffs also cite to Dr. Capps' self-styled affidavit, which has been stricken from the summary judgment record. *See* Doc. No. 48 at 7.

Trespassing for Any Purpose is Strictly Forbidden Violators Will Be Prosecuted" sign on the door); *United States v. Bearden*, 780 F.3d 887, 894 (8th Cir. 2015) (stating that "we have held that police entry through an unlocked gate on a driveway to approach the front door of a residence for a 'knock-and-talk' is a reasonable, limited intrusion for legitimate law enforcement objectives"); *but see Edens v. Kennedy*, 112 F. App'x 870, 875 (4th Cir. 2004) (per curiam) (unpublished) (holding that homeowner revoked implied license to enter when they enclosed their home's curtilage with a fence, locked the gate, and posted "No Trespassing" signs).

Plaintiffs cite no case holding that an inspector who is lawfully on the premises and sees an apparent public health and safety violation from the exterior of a home needs a warrant before taking pictures of the violation and placing a Notice of Violation on the front door. Mr. Bailey is therefore entitled to qualified immunity as to Plaintiffs' claims that his first visit violated their Constitutional rights.

### B. Mr. Bailey did not violate clearly established law during his second visit

Mr. Bailey decided to visit the Plaintiffs' property again on December 8, 2020, because he had not heard back from Dr. Capps regarding the Notice of Violation.[40]  Mr. Bailey states that "when he arrived at the driveway, [he] saw there was a new manufactured gate at the entrance."[41] The gate was unlocked, so Mr. Bailey entered the driveway and knocked on the door.[42]

Mr. Bailey asserts that after the October 19th visit, although he communicated with Dr. Capps over email, "neither Dr. Capps nor any other person ever told Mr. Bailey not to enter his property."[43] Plaintiffs, on the other hand, state that "Mr. Bailey's second intrusion is even more troubling because Mr. Bailey had explicit notice from plaintiff Capps—after his first intrusion—

---

[40] Doc. No. 39 at 11; Doc. No. 39-2 at 5.
[41] Doc. No. 39 at 11.
[42] *Id.*
[43] *Id.* at 10.

that he needed to obtain either consent from plaintiffs or a warrant before entering their enclosed residential property."[44] Plaintiffs do not cite to competent summary judgment evidence to support their assertion that Dr. Capps told Mr. Bailey after his first visit that he could not enter the property without consent or a warrant.[45] Plaintiffs do not cite to cases holding that such a conversation would revoke Mr. Bailey's implied license to conduct a knock and talk.

As stated previously, it is not clearly established that the existence of a closed gate at the base of Plaintiffs' driveway would revoke Mr. Bailey's implied license to conduct a knock and talk during his second visit to the property. Plaintiffs have also not cited any cases where property owners successfully revoked the implied license to conduct a knock and talk through oral or written communication.[46] The Fifth Circuit has yet to delineate the contours of revocation. Therefore, Mr. Bailey is entitled to qualified immunity as to his visit to Plaintiffs' property on December 8th. The Court reiterates that it has not decided whether Mr. Bailey violated Plaintiffs' Fourth Amendment rights on either visit to Plaintiffs' property. The Court only holds that Plaintiffs have not met their burden of establishing that it would be clear to a reasonable officer that Mr. Bailey's conduct was unlawful.

Plaintiffs cite to *Katz*, *Camara*, and The Texas Code of Criminal Procedure to support their argument that Mr. Bailey was on notice that his behavior violated their constitutional rights.[47] However, "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015).

---

[44] Doc. No. 48 at 6.

[45] *See* Doc. No. 48 at 6 (no citation given to the record). Plaintiffs cannot rely on the facts in their unverified complaint to defeat a motion for summary judgment. *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991).

[46] The United States District Court for the Middle District of Florida noted in dicta in *Holmes* that it "[had] not found any written message that courts uniformly deem sufficient in and of itself to convey that the implied license is revoked." *United States v. Holmes*, 143 F. Supp. 3d 1252, 1270 n.24 (M.D. Fla. 2015). The Court was considering what written message would successfully revoke the implied license when posted on a sign. *Id.*

[47] Doc. No. 48 at 17–19.

*Camara* established that housing and building inspectors need consent or a warrant to *enter* a residence to search for code violations. *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 540 (1967). Plaintiffs cite to *Katz* for the principal that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.[48] However, "abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Plaintiffs' reliance on Article 18.05 of the Texas Code of Criminal Procedure is unavailing for the same reason.[49] Therefore, the Court recommends granting summary judgment on claims against Mr. Bailey in his personal capacity because Mr. Bailey is entitled to qualified immunity.

## III.    Municipal Liability

Defendant Bailey's motion for summary judgment on the issue of qualified immunity also asserts a 12(b)(6) defense: that Plaintiffs have failed to state a claim against Henderson County.[50] Similarly, Defendant Henderson County's motion for summary judgment argues that Plaintiffs have failed to state a *Monell* claim against Henderson County.[51]

Although not an issue raised by Plaintiffs in their responses to either motion, the Court will first address the timeliness of Defendant's arguments. Federal Rule of Civil Procedure 12(b) states that a motion asserting a failure to state a claim defense must be made before pleading if a responsive pleading is allowed. FED R. CIV. P. 12(b)(6). However, "motions to dismiss filed after

---

[48] Doc. No. 48 at 17–18 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[49] Article 18.05 states that "a search warrant may be issued to a fire marshal, health officer, or code enforcement official of the state or of any county, city, or other political subdivision for the purpose of allowing the inspection of any specified premises to determine the presence of a fire or health hazard or unsafe building condition or a violation of any fire, health, or building regulation, statute, or ordinance." TEX. CODE CRIM. PROC. ANN. ART. 18.05(a).

[50] Doc. No. 39 at 24.

[51] Doc. No. 59 at 17.

responsive pleading are rarely dismissed as improper." *Palomino v. Wells Fargo Bank, N.A.*, No. 615CV375, 2017 WL 989300, at *2 (E.D. Tex. Feb. 17, 2017), *report and recommendation adopted*, No. 615CV375, 2017 WL 978930 (E.D. Tex. Mar. 14, 2017) (quoting *Reeves v. Wells Fargo Bank, N.A.*, No. 13CV318, 2014 WL 12492038, at *3 (W.D. Tex. Apr. 14, 2014). When the defendant has previously included failure to state a claim for which relief may be granted as a defense in his or her answer to the complaint, courts generally permit a Rule 12(b)(6) motion to be filed after the answer. *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 575 (N.D. Tex. 2005) (collecting cases). Defendants in this case listed failure to state a claim upon which relief can be granted as an affirmative defense in their answer.[52] The Court can therefore consider Defendants' failure to state a claim argument.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiffs appear to assert two theories of municipal liability in their complaint: that the county (1) ratified Mr. Bailey's conduct, and (2) failed to adequately train or supervise their employees, agents, and designated representatives.[53] To survive a motion to dismiss, Plaintiffs must plead facts that plausibly support each element of § 1983 municipal liability under either theory. *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

---

[52] Doc. No. 14 at 6.
[53] Doc. No. 1 at ¶ 15.

Municipalities can be sued under § 1983, but their liability cannot be based on a theory of vicarious liability or respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). A plaintiff alleging a direct claim of municipal liability must demonstrate a factual dispute as to the following elements: (1) an official policy or custom exists; (2) the policy or custom was promulgated by the municipal policymaker; and (3) the policy or custom was the moving force behind the constitutional violation. *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)). Where a plaintiff's claim fails as to one prong, a court need not consider whether their claim also fails the other two *Monell* prongs. *Brown v. Tarrant Cnty.*, Tex., 985 F.3d 489, 497.

### A. Plaintiffs do not state a claim under a failure-to-train theory

Plaintiffs fail to adequately plead a failure-to-train theory. "[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability for failure to train attaches only when the failure to train "evidences a 'deliberate indifference' to the rights of its inhabitants." *Harris*, 489 U.S. at 389.

To proceed beyond the pleading stage, Plaintiffs must allege that: (1) Henderson County failed to train or supervise Mr. Bailey; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of Plaintiffs' rights; and (3) the failure to train or supervise constituted deliberate indifference to the Plaintiffs' constitutional rights. *See Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021).

Plaintiffs fail to meet their pleading burden on several of these elements. Plaintiffs have not identified a specific training program or shown how it is inadequate. *See Taylor v. Hartley*,

17

488 F. Supp. 3d 517, 536 (S.D. Tex. 2020) (noting that without identifying a sufficiently specified training program or defects, Plaintiff necessarily hasn't shown the causation required to state a claim).

To prove deliberate indifference, the plaintiff generally is required to prove at least a pattern of similar constitutional violations by untrained employees. *Hutcheson*, 994 F.3d at 482 (quotation omitted). "[T]he 'single-incident method of proving deliberate indifference' is 'generally reserved' for cases in which 'no training whatsoever' occurred." *Sauceda v. City of San Benito, Texas*, 78 F.4th 174, 190 (5th Cir. 2023) (citing *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 (5th Cir. 2018)).

Plaintiffs' complaint contains no factual allegations of a pattern of similar constitutional violations by untrained employees which is "ordinarily necessary" to establish deliberate indifference to state a failure-to-train claim. *Connick*, 563 U.S. at 62. Plaintiffs' conclusory allegations about Henderson County's failure to train do not meet the high standard for the narrow single-incident exception because nowhere in the complaint do Plaintiffs allege that Mr. Bailey received "no training whatsoever." Additionally, for the single-incident exception to apply Plaintiffs must prove that the specific violation they suffered was the "highly predictable consequence" of the County's failure to train Mr. Bailey, and that the failure to train was the "moving force" behind the constitutional violation. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).

Plaintiffs have not alleged facts that permit the Court to draw the reasonable inference that Henderson County was deliberately indifferent to an obvious need for training their employees, agents, or designated representatives in the constitutional limitations on their authority to enter a property owner's premises. Plaintiffs' § 1983 claim against Henderson County for failure to train should be dismissed.

**B.  Plaintiffs do not state a claim under a ratification theory**

To the extent that Plaintiffs bring a § 1983 claim against Henderson County on a theory of ratification, it should also be dismissed. "The ratification theory provides another way of holding the city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (footnote omitted).

Plaintiffs' complaint states that "there is some evidence that suggests Henderson County policymakers ratified Mr. Bailey's conduct."[54] However, no part of Plaintiffs' Complaint contains allegations regarding what this "evidence" is, who the policymakers are, or how the policymakers ratified Mr. Bailey's conduct. The statement that "there is some evidence that suggests Henderson County policymakers ratified Mr. Bailey's conduct" is conclusory. Any *Monell* claim Plaintiffs bring on a theory of ratification should be dismissed.

Suits against governmental officers or employees in their official capacity are suits against the entity that the officer represents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("A plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself."). Therefore, to the extent that Plaintiffs sue Mr. Bailey in his official capacity, these claims are claims against Henderson County and the same analysis applies. Plaintiffs fail to meet the pleading standards necessary for a ratification theory or failure-to-train theory of liability.

---

[54] Doc. No. 1 at ¶ 15.

## IV.    Official Immunity

Defendants assert Mr. Bailey is also entitled to official immunity.[55] The Court will not analyze whether Mr. Bailey is entitled to official immunity because Plaintiffs have not asserted a state law cause of action against Mr. Bailey. *See Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regul. Servs.*, 380 F.3d 872 (5th Cir. 2004) (analyzing whether qualified immunity applied to Plaintiffs' federal claims and whether official immunity applied to Plaintiffs' state law claims).

## V.    Declaratory Relief

The Declaratory Judgment Act authorizes relief only in cases of "actual controversy." 28 U.S.C.A. § 2201. "[I]f there is no 'case or controversy,' the court has no jurisdiction over the subject matter of a claim." *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 808 (5th Cir. 1972). To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.*

It has been over three years since Mr. Bailey issued a Notice of Violation for holes on the Plaintiffs' property that he believed were a makeshift septic system.[56] Plaintiffs do not allege that Henderson County has prosecuted or otherwise followed up with them regarding the Notice of Violation issued by Mr. Bailey in 2020. Defendants state that Plaintiffs' septic installation was a one-time project in 2020 which is unlikely to repeat, and that no further compliance issues have been alleged by the State or County.[57] Plaintiffs note in their briefing that "[in] October 2020 a

---

[55] Doc. No. 39 at 22.
[56] *See* Doc. No. 39 at 9–10.
[57] Doc. No. 49 at 8.

preliminary hole in the ground had been dug but no on-site sewage system had been installed."[58] Plaintiffs characterize their request for declaratory relief as a request that the Court declare "an on-site sewage system *could* be installed by them on their 39 plus acre homestead as allowed under Texas law so long as they adhere to the applicable regulatory exemptions."[59]

The Court does not have subject matter jurisdiction over Plaintiffs' request for declaratory relief because Plaintiffs do not allege any ongoing controversy regarding their septic system. The Court will not issue a declaratory judgment that Plaintiffs *could* build an OSSF system that *would be* in regulatory compliance if Henderson County were to inspect it. Plaintiffs assert a controversy that is hypothetical and contingent, and Henderson County alleges no further compliance issues. The Court therefore recommends dismissing the declaratory judgment action for lack of subject matter jurisdiction.

## **RECOMMENDATION**

Based on the foregoing, the Court **RECOMMENDS** granting Defendant James Bailey's motion for summary judgment (Doc. No. 39) on the basis that he is entitled to qualified immunity and that the Court does not have subject matter jurisdiction over the declaratory judgment action. The Court **RECOMMENDS** granting Defendant Henderson County's motion for summary judgment (Doc. No. 59) on the basis that Plaintiffs have failed to state a claim against Henderson County and that the Court does not have subject matter jurisdiction over the declaratory judgment action. Defendants' Motion to Strike (Doc. No. 50) is also **GRANTED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or

---

[58] Doc. No. 70 at 4.
[59] *Id.* (emphasis added).

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).


So ORDERED and SIGNED this 2nd day of January, 2024.


K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE