UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:22-cv-00391

**Robert Capps, MD, et al.,**
*Plaintiffs,*

v.

**Henderson County, Texas, et al.,**
*Defendants.*

# OPINION AND ORDER

Plaintiffs Robert Capps and Aily Hoang sue under 42 U.S.C. § 1983, alleging that defendant James Bailey violated their Fourth Amendment rights during two visits to their property.[1] Plaintiffs also seek to hold defendant Henderson County liable for those alleged Fourth Amendment violations.[2] And plaintiffs seek a declaratory judgment against Henderson County that "their sewage disposal system does not require a permit pursuant to Texas Health and Safety Code Section 366.502(a)."[3]

The magistrate judge issued a report[4] recommending that the court grant both defendants' motions for summary judgment.[5] In that report, the magistrate judge also ordered certain documents tendered by plaintiffs to be stricken, on defendants' motion.[6]

That report and order are now reviewed on plaintiffs' objections[7] and defendants' response to the objections.[8] The court reviews the objected-to portions of the report de novo[9] and the unobjected-to portions of the report and the order striking

---

[1] Doc. 1 at 9–10 ¶¶ 22–23.

[2] *Id.* at 5–6 ¶ 15.

[3] *Id.* at 9 ¶ 21.

[4] Doc. 83.

[5] Docs. 39, 59.

[6] Doc. 50; *see* 28 U.S.C. § 636(b)(1)(A) (magistrate-judge authority to rule on the motion to strike, not just recommend a disposition of the motion).

[7] Doc. 89.

[8] Doc. 90.

[9] *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1).

documents for clear error.[10] For the reasons below, the court does not disturb the magistrate judge's order striking documents. The court then denies defendant Bailey's motion for summary judgment in part but otherwise accepts the magistrate judge's report and recommendation.

1. **Objections to the order striking plaintiffs' unsigned, undated declarations**

On review of a summary-judgment motion, a court construes all facts in the record in the light most favorable to the nonmovant. In applying that principle here, the court must disregard the unsworn declarations of facts tendered by plaintiffs[11] because they were stricken from the record by the magistrate judge, unless the court reverses that order for clear error. The court thus first turns to that order.

The magistrate judge granted defendants' motion to strike three self-styled affidavits attached to plaintiffs' response to defendant Bailey's motion for summary judgment because they were not sworn to and were not in conformity with 28 U.S.C. § 1746's allowance for unsworn declarations because they were undated and unsigned.[12] Plaintiffs, who are represented by counsel, did not respond to the motion to strike by seeking leave to file replacement declarations in conformity with § 1746.[13]

"A magistrate judge is permitted broad discretion in resolving nondispositive pretrial motions,"[14] including motions to strike documents that do not meet the legal requirements for proof sufficient to overcome summary judgment.[15] An order striking such

---

[10] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996) (en banc) (unobjected-to portions of report); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) (clear error review for "non-dispositive, pretrial motion").

[11] Docs. 48-2, 48-3, 48-4.

[12] Doc. 83 at 6.

[13] *Id*.

[14] *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 898 (S.D. Tex. 2015).

[15] *See Baker v. Bowles*, 2007 WL 9747849, at *4 (N.D. Tex. July 10, 2007) (clear-error review attaches to magistrate judge's order striking documents

materials "may only be set aside if it 'is clearly erroneous or is contrary to law.'"[16]

Here, plaintiffs argue that the unsworn, undated attestations of fact were competent summary-judgment evidence. But plaintiffs argue only that the attestations qualify as "declarations" cognizable under Rule 56(c)(1)(A), as opposed to other cognizable evidence such as stipulations or depositions.[17] Plaintiffs' arguments do not show any clear error in the magistrate judge's conclusion that the attestations are not sufficient declarations.

Plaintiffs argue that their declarations were "signed and dated by filing with the Court."[18] But the declarations were e-filed by plaintiffs' attorney, who does not himself claim personal knowledge of the matters therein (and who would be incompetent to testify in his own clients' case in any event). And the e-filing constitutes only a signature by plaintiffs' counsel, as opposed to plaintiffs' themselves. A recitation of facts that "is signed only by counsel, [and] is not in affidavit form, . . . is not properly to be weighed, as far as its factual statements are concerned, in determining whether summary judgment should be granted."[19]

Additionally, the declarations are not only unsigned but undated. To be sure, courts have considered undated declarations if the declarant submits extrinsic evidence demonstrating the period during which the document was signed.[20] But, as just noted, the declarations here were not signed by the purported declarants at all. Plaintiffs cite no case allowing an undated and unsigned declaration to be considered as evidence.

---

from the summary-judgment record); E.D. Tex. L.R. CV-56(b), (d) (requiring party opposing summary judgment to attach competent proof, such as affidavits or declarations).

[16] *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quoting Fed. R. Civ. P. 72(a)).

[17] Doc. 89 at 1.

[18] *Id.* at 2.

[19] *Wittlin v. Giacalone*, 154 F.2d 20, 22 (D.C. Cir. 1946).

[20] *See, e.g.*, *Olibas v. John Barclay Native Oilfield Servs., LLC*, 2014 WL 12602869, at *2 (N.D. Tex. Mar. 12, 2014) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002)).

Plaintiffs next assert that courts do not strike declarations without "some material discrepancy or suspicion of foul play."[21] Although plaintiffs cite the district court's decision in *Olibas* for that assertion, the court there did not consider suspicion of foul play or the presence of a discrepancy in its decision not to strike an undated declaration.[22] Rather, the court in *Olibas* decided not to strike the declaration at issue because "courts typically do not exclude an undated declaration unless it fails to comply with some other statutory requirement as well" and because the proponent of the declaration provided extrinsic evidence demonstrating the date the declaration was signed.[23]

Again, in contrast to those facts, the declarations here failed to meet two statutory requirements in that they were undated and unsigned by the declarants—and thus offered without extrinsic evidence of the date of any signature.[24] Courts have refused to admit such declarations to defeat summary judgment.[25] Accordingly, the order striking the unsigned, undated declarations from the summary-judgment record was not a clear abuse of the magistrate judge's "broad discretion."[26] Plaintiffs' objections to that order are overruled.

2. **Objections to the recommendation of summary judgment in favor of both defendants**

   **a.** The following recitation views the facts in the summary-judgment record in the light most favorable to plaintiffs.

   Plaintiffs Capps and Hoang reside on over 39 acres of land in Chandler, Texas, a municipality within Henderson County.[27] During the events giving rise to this lawsuit, defendant James Bailey

---

[21] Doc. 89 at 3.
[22] *Olibas*, 2014 WL 12602869, at *2.
[23] *Id.*
[24] Doc. 83 at 5–6.
[25] *Rogers v. Paris Reg'l Med. Ctr.*, 2021 WL 5622119, at *6 (E.D. Tex. Oct. 22, 2021); *Orr v. Orbis Corp. (Wisconsin)*, 2010 WL 3368124, at *3 (N.D. Ga. July 30, 2010) (collecting cases).
[26] *Moore*, 755 F.3d at 806.
[27] Doc. 1 at 3 ¶ 7.

was Henderson County's designated representative for inspecting onsite sewage facilities (OSSFs), such as septic tanks.[28]

On October 19, 2020, Bailey received an anonymous complaint that an OSSF was being installed on plaintiffs' property closer to the property line than allowed.[29] Later that day, Bailey drove by plaintiffs' property and observed a large pile of dirt approximately 100 yards from the road.[30] From his "training, education, and over forty years[] of experience," it was "clear" to him that this pile of dirt was "some sort of a makeshift septic system."[31] He could also tell from the roadway that the septic system was closer than 100 yards to a fence, which he presumed marked plaintiffs' property line.[32] A picture of plaintiffs' property was taken by Mr. Bailey from his vantage point on the public roadway:[33]



---

[28] Doc. 39-2 (Bailey affidavit) at 2.
[29] *Id*. at 3.
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] Doc. 59-1 at 16.

Without a warrant, Mr. Bailey walked up to the house and knocked on the door, but no one answered.[34] At some point, he took four more photographs:[35]






"After taking the photographs, [he] then affixed a notice on the door of the house informing the [owners] that their septic configuration violated various codes, rules, and regulations."[36]

---

[34] Doc. 39-2 at 3.
[35] Doc. 59-1 at 7–10.
[36] Doc. 39-2 at 5.

After returning home, Capps contacted Bailey about the notice.[37] A few months later, Bailey returned to plaintiffs' property (again without a warrant) and noticed a "new manufactured gate at the entrance."[38] The gate was closed but unlocked. Bailey opened the unlocked gate, walked up the driveway, and knocked on the door.[39] Hoang, apparently alarmed, asked Bailey how he had gained access to the property.[40] Capps then came outside and motioned Bailey to walk away from porch.[41] Plaintiffs allege that Bailey's conduct during both visits violated the Fourth Amendment.

**b.** The magistrate judge concluded that Bailey is entitled to qualified immunity.[42] Plaintiffs object to that conclusion.

To defeat qualified immunity, plaintiffs must show that it is clearly established in the Fifth Circuit that Bailey's actions violated plaintiffs' Fourth Amendment rights.[43] "To provide such clarity, the precedent must be sufficiently specific: '[i]t is not enough that a rule be suggested by then-existing precedent.'"[44] A "case directly on point" is not required, but the case law must place a rule's application to a set of facts "beyond debate."[45] As noted, in the context of evaluating qualified immunity, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing [summary judgment]."[46]

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 5–6. It is unclear whether Mr. Bailey opened the gate fully in order to drive up to the residence (rather than walk) or if he closed the gate thereafter.

[40] *Id.* at 6.

[41] *Id.*

[42] Doc. 89 at 2.

[43] *See Boyd v. McNamara*, 74 F.4th 662, 667–68 (5th Cir. 2023).

[44] *Id.* (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)).

[45] *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

[46] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

violated."[47] At the "very core" of this right is "the right of a man to retreat into his own home and there be free from unreasonable government intrusion."[48] "And the 'curtilage' of the home—that is, 'the area immediately surrounding and associated with the home'—is 'part of the home itself for Fourth Amendment purposes.'"[49]

*1. The first visit.*—The Supreme Court in *Florida v. Jardines*[50] clarified the lawfulness of warrantless "knock-and-talks." Although doing so involves walking up to and on the front porch of a home—the "classic exemplar" of curtilage—officials possess the same implied license as any member of the public to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent an invitation to linger longer) leave."[51]

But that implied invitation has limits. For example, in *Jardines*, the officer violated the Fourth Amendment by walking a drug-detection dog back-and-forth along the normal pathway to a front door over the span of a minute or two.[52]

The record here, viewed most favorably to plaintiffs, establishes that on his first visit Bailey walked up the driveway to plaintiffs' door, knocked, and awaited an answer. That alone was within the scope of the implied license recognized in *Jardines*.

But the record would allow a jury to find that, rather than leave after getting no answer, Bailey proceeded to take pictures after walking over to the other side of plaintiffs' dwelling.[53] If he indeed did so, Bailey intruded on the curtilage of plaintiffs' home outside the scope of an implied license and thus violated the Fourth

---

[47] U.S. Const. Amend. IV.
[48] *Silverman v. United States*, 365 U.S. 505, 511 (1961).
[49] *Sauceda v. City of San Benito*, 78 F.4th 174, 183 (5th Cir. 2023) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).
[50] 569 U.S. 1 (2013).
[51] *Id.* at 7–8; *see also id.* at 8 (noting that "the Nation's Girl Scouts and trick-or-treaters" manage this standard "without incident").
[52] *Id.* at 18 (Alito, J., dissenting).
[53] The pictures are taken from different angles of the house, and Mr. Bailey's affidavit seems to recount that he took the photos while on plaintiffs' property.

Amendment. In *Jardines*, the officer stuck to the traditional pathway to the front door of the house. In contrast, Bailey's photographs support an inference that he left the traditional pathway up to the front porch, walked all the way to the backside of the house, and took photographs within 30 feet of the dwelling.[54] Even the dissent in *Jardines* recognized that, in acting under an implied license to approach front door, "[a] visitor must stick to the path that is typically used to approach a front door" and could not "traipse through the garden, *meander into the backyard*, or take other circuitous detours that veer from the pathway that a visitor would customarily use."[55]

*Jardines* gave public officials clear guidance as to behavior that is allowed when entering property to conduct a knock-and-talk. Meandering into the backyard was squarely foreclosed. Because there is a fact issue as to whether Bailey exceeded those clear guidelines, qualified immunity is inappropriate at this stage as to his liability regarding his first visit to plaintiffs' property.

2. *The second visit.*—The second visit differs from the first in two ways. First, there was a closed but unlocked gate that Bailey had to open to approach plaintiffs' front door.[56] Second, no record evidence supports an inference that Bailey's conduct on this visit extended beyond approaching the front door, knocking, talking, and leaving.

*Jardines* held that public officials have the same implied license as the rest of the general public to approach a home to knock and seek an audience with its inhabitants.[57] But that implied

---

[54] *See* Doc. 39-2 at 3 ("The single-wide trailer house was approximately thirty feet way from a fence which appeared to be the property line. The pile of dirt and makeshift septic system was between the house and the fence.").

[55] *Jardines*, 569 U.S. at 19 (Alito, J., dissenting) (emphasis added); *see also Bovat v. Vermont*, 141 S. Ct. 22, 24 (2020) (Gorsuch, J., respecting denial of cert.) (noting that there are no "'semiprivate' areas within the curtilage where governmental agents may roam from edge to edge").

[56] Capps stated in his unsworn declaration that there was also a closed gate that Bailey passed through at the first visit, but that affidavit was struck from the record above.

[57] *Jardines*, 569 U.S. at 8.

license may be revoked as to the public generally.[58] Plaintiffs argue that societal expectations dictate that "when confronted with a closed gate," absent an explicit invitation, "one does not enter a property for any reason short of clear emergency."[59] Plaintiffs argue that by opening or otherwise passing through the closed gate, Bailey may have violated Texas criminal law.[60] The court agrees that the most prudent of visitors, such as the stereotypical Girl Scouts selling cookies, would not open a closed gate to approach a house, especially a house set back on a rural property in America.[61]

Those conclusions are some indicia that a reasonable member of the public would have known that there was no implied license to knock-and-talk at plaintiffs' door in the face of the specific gate and property here. But, as explained by the magistrate judge, no Supreme Court or Fifth Circuit case has expounded on the conduct or physical alterations to a home that would revoke the implied license.[62] The closest guidance found by this court was not any such appellate decision, but simply the suggestion of Florida's counsel at oral argument in *Jardines* that "[h]omeowners can restrict access to people who come up to their front door by putting [up] gates."[63]

---

[58] *See United States v. Carloss*, 818 F.3d 988, 999 (10th Cir. 2016) (Tymkovich, C.J., concurring) (noting that consent to approach a front door would be revoked if a reasonable visitor "must know or ha[ve] reason to know" that the homeowner has revoked the license).

[59] Doc. 89 at 4.

[60] *See* Tex. Pen. Code § 30.05(b)(2) ("fencing or other enclosure obviously designed to exclude intruders or contain livestock" provides sufficient notice to constitute trespass).

[61] *See Jardines*, 569 U.S. at 8 (using analogy of how Girl Scouts would handle the situation); Girl Scouts of Utah, Wow the World!: Girl Scout Cookie Program Family Guide 2020, at 15, https://www.gsutah.org/content/dam/girlscouts-gsutah/cookies-and-fall-product/2020-cookie-documents/2020%20Family%20Guide.pdf ("Girls should not go into a yard if there is a dog or a closed gate/fence.").

[62] Doc. 83 at 12–13.

[63] Transcript of Oral Argument at 5–6, *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (No. 11-564).

But the court has found no precedent deciding whether revocation of the implied license turns on factors like the nature of an unlocked gate (part of a low, white-picket fence vs. part of a more rustic metal fence) or the nature of the environment (rural, suburban, urban). The circumstances of an unlocked gate that could signal revocation of the implied license are not "so well defined" that it would be "'clear to a reasonable officer that [knocking on the door] was unlawful in the situation [Bailey] confronted.'"[64]

Because neither the Supreme Court nor the Fifth Circuit have held that the implied license is revoked in circumstances providing clear guidance on the facts here, Bailey is entitled to summary judgment from damages liability as to his second visit, whether or not his conduct actually violated the Fourth Amendment. Plaintiffs are, of course, free to ask higher courts to overturn the doctrine of qualified immunity or provide a Fourth Amendment ruling on the facts of this case.[65]

**c.** The magistrate judge concluded that defendant Henderson County is entitled to summary judgment because plaintiffs' complaint fails to state a valid claim against it.[66] In doing so, the magistrate judge construed defendant's motion for summary judgment as a motion to dismiss. Because plaintiffs did not object to the magistrate judge's conclusion as to this defendant, the court reviews that recommended disposition for clear error.[67]

The complaint asserts two theories of municipal liability: ratification and failure-to-train.[68] As to ratification, the court is left with nothing more than the complaint's naked allegation of "some evidence that suggests Henderson County policymakers ratified Mr. Bailey's conduct."[69] As to the failure-to-train claim, the

---

[64] *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[65] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts have discretion to decide whether an official violated the Constitution before deciding whether the right was clearly established).

[66] Doc. 83 at 15–19.

[67] *Douglass*, 79 F.3d at 1420.

[68] Doc. 83 at 16; Doc. 1 at 6.

[69] Doc. 1 at 6.

complaint's bare allegation of inadequate training or supervision,[70] is expounded upon, to some extent, in plaintiffs' argument here.[71] But that limited argument does not show any clear error in the magistrate judge's conclusion that the complaint's allegations are conclusory and warrant dismissal.

The magistrate judge's report and recommendation is thus adopted in that regard, and plaintiffs' claims against Henderson County are dismissed. Plaintiffs are granted one opportunity to amend their pleading, if they wish, and have until April 10, 2024, to file an amended complaint.

**d.** Plaintiffs object to the magistrate judge's finding that the court does not have subject-matter jurisdiction over their declaratory-judgment claim.[72] Plaintiffs' complaint requests "a declaratory finding that their sewage disposal system does not require a permit pursuant to Texas Health and Safety Code Section 366.052(a)."[73]

The magistrate judge recommended granting defendants' motions for summary judgment on the declaratory-judgment action because plaintiffs do not allege any ongoing controversy regarding their septic system's compliance with the Texas Health and Safety Code.[74] "The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy."[75] As noted in the report, dismissal of a declaratory judgment action is

---

[70] *Id.*

[71] *See* Doc. 70 at 18 (pointing out that defendant Bailey swears he is unaware of training he received that any action he took was unlawful); *id.* at 28 (alleging that Henderson County has "never disciplined James Bailey either by counseling him, reprimanding him, or causing him to undergo serious training in the manner in which to conduct lawful, compliant entries onto the private property of others or how and when to request a search warrant to carry out his important lawful duties").

[72] Doc. 89 at 8.

[73] Doc. 1 at 9.

[74] Doc. 83 at 21.

[75] *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990).

proper when no "actual controversy" exists between the parties such that the declaratory action is not justiciable.[76]

Plaintiffs admit in their objections that "the parties do not dispute that plaintiffs' on-site sewage facility once installed was fully compliant with Texas regulatory law in all respects."[77] Because there is no continuing controversy between the parties now that the septic system is installed, the court does not have subject-matter jurisdiction over plaintiffs' declaratory-judgment action. Plaintiffs' claim for that relief is dismissed without prejudice for lack of jurisdiction.

### 3. Outstanding discovery issues

Lastly, plaintiffs object to the fact that the magistrate judge did not rule on defendants' pending motion for protection before issuing the report.[78] The deadline for discovery regarding qualified immunity in this case was May 19, 2023.[79] Bailey filed his motion for summary judgment on qualified immunity on June 13, 2023.[80] The interrogatories and requests for production at issue in defendants' motion for protection were propounded on August 9, 2023.[81] Crucially, the discovery order entered in this case noted that "discovery shall be limited to the issue of qualified immunity until the issue is decided by the Court."[82] It was appropriate to delay a ruling on interrogatories and requests for production that were propounded months past the May 19 deadline because the issue of qualified immunity had not been decided.

### 4. Conclusion

For the reasons stated above, (1) the court declines to disturb the magistrate judge's order on defendants' motion to strike; (2)

---

[76] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (noting that when considering a declaratory judgment action, a district court's first step should be to determine whether an "actual controversy" exists between the parties to the action).
[77] Doc. 89 at 2.
[78] *Id.* at 7.
[79] Doc. 27 at 5.
[80] *See* Doc. 39.
[81] Doc. 55 at 1.
[82] Doc. 24 at 4.

defendant Bailey's motion for summary judgment based on qualified immunity[83] is denied as to the alleged first visit and granted as to the alleged second visit; (3) defendant Henderson County's motion for summary judgment[84] is construed as a motion to dismiss for failure to state a claim and is granted; and (4) plaintiffs' claim for a declaratory judgment is dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiffs have until April 10, 2024, to file an amended complaint, if desired.

*So ordered by the court on March 26, 2024.*

J. CAMPBELL BARKER
United States District Judge

---

[83] Doc. 39.
[84] Doc. 59.